# In the United States Court of Federal Claims

No. 24-1868
Filed: August 29, 2025

|  |  |
|---|---|
| SALAHUDIN SHAHEED, | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| *Defendant.* | ) |

*Salahudin Shaheed, pro se.*

*Bryan M. Byrd*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Steven J. Gillingham,* Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, for Defendant.

**OPINION AND ORDER**

**I.      Background**

Plaintiff Salahudin Shaheed is incarcerated in federal prison.  ECF No. 1 at 9;[1] ECF No. 10 at 1.  Since his initial incarceration in 2015, the Bureau of Prisons ("BOP") has relocated Mr. Shaheed twice.  ECF No. 1-2 at 30.  BOP first placed Mr. Shaheed at Federal Corrections Institute ("FCI") Berlin in New Hampshire.  ECF No. 1-2 at 30.  In February 2023, he was transferred to FCI McKean in Pennsylvania.  *Id.*  BOP moved him once more in November 2023, this time to FCI Pollock in Louisiana, where he is currently being held.  *Id.*; ECF No. 10 at 2.

While in custody at FCI Berlin, Mr. Shaheed unsuccessfully moved to withdraw his guilty plea.  *United States v. Shaheed*, 688 F. App'x 120, 121 (3d Cir. 2017).  After exhausting all his appeals, Mr. Shaheed requested his defense attorney send his entire case file to FCI Berlin.  ECF No. 1-2 at 2-4; *id.* at 30.  Pursuant to a court order, Mr. Shaheed's defense attorney sent Mr. Shaheed's case file to FCI Berlin, ECF No. 1-2 at 2-4, which consisted of forty

---

[1] Because Mr. Shaheed's complaint is not consecutively paginated, the court refers to the page numbering in the ECF header.

computer discs, ECF No. 1-2 at 8-12; ECF No. 1 at 9.  FCI Berlin received all forty discs.  ECF No. 1-2 at 8-12.

FCI Berlin's policies allow inmates to view their legal materials on a computer if both the inmate and a witness sign a document titled "Rules Governing the Use of Electronic Storage Media to View Legal Materials" ("Rules Document").  *Id.* at 6.  The Rules Document contains the following relevant language: "I, inmate, . . . agree to abide by the following rules of use.  I understand that any violation of these rules will result in my suspension from the program and disciplinary action."  *Id.*

Mr. Shaheed wanted to view his legal material but asked for more information about the Rules Document before signing it.  ECF No. 11 at 8-9.  At this point, Mr. Shaheed had a conversation with a BOP officer.  *Id.*  The BOP officer described the document as a contract with the government in which he "assured the safety of Mr. Shaheed's property."[2]  *Id.*  This conversation "persuaded" Mr. Shaheed to sign the Rules Document.  *Id.*; ECF No. 14 at 1-2.  The BOP officer signed on as the witness.  ECF No. 11 at 8; ECF No. 14 at 2.

In February 2023, BOP transferred Mr. Shaheed to FCI McKean.  ECF No. 1-2 at 30.  FCI McKean inventoried and catalogued all forty discs.  *Id.*

Finally, in November 2023, BOP transferred Mr. Shaheed to FCI Pollock.  *Id.*  While at FCI Pollock, Mr. Shaheed reached out to the Innocence Project.  ECF No. 1 at 10; ECF No. 1-2 at 14-16.  The Innocence Project responded in a letter which asked for more information about his case.  ECF No. 1 at 10; ECF No. 1-2 at 14-16.  Mr. Shaheed then requested the discs be returned so he could send them to the Innocence Project.  ECF No. 1 at 9-10.  At this point, it was discovered that ten of the forty discs were missing because FCI Pollock could only return thirty of the forty discs, and the prison's records show they only received thirty discs from FCI McKean.  ECF No. 1-2 at 30; ECF No. 1 at 9-10.  Neither FCI Berlin nor FCI McKean have the ten missing discs.  ECF No. 1-2 at 26.  Mr. Shaheed argues that an officer at FCI McKean lost the discs, because that officer was the last person Mr. Shaheed saw in possession of all forty discs.  ECF No. 1 at 11; ECF No. 1-2 at 30.  The specific DNA information the Innocence Project requested is on the ten missing discs.  ECF No. 1 at 10.

Accordingly, Mr. Shaheed initiated an administrative remedy process at FCI Pollock.  ECF No. 1-2 at 18-26.  FCI Pollock denied Mr. Shaheed's claim because "the administrative remedy process is not the appropriate avenue to seek [monetary] relief . . . . [T]he appropriate avenue to seek relief is through a TORT claim."  *Id.* at 26.  Mr. Shaheed appealed the decision to

---

[2] Mr. Shaheed describes this conversation in his affidavit through the following statement:

> The "U.S., employee under the job title supervisor" stated to SALAHUDIN SHAHEED that, [he] had the authority to delegate on behalf of the U.S., in contracts and gave SALAHUDIN SHAHEED assurance that [his] property would be safe with the United States and explained how SALAHUDIN SHAHEED could take possession of [his] property.  The aforesaid verbal communication, persuaded SALAHUDIN SHAHEED to tender [his] property to the United States.

ECF No. 14 at 1-2 (quotation and capitalization in the original).

the Regional Director of BOP, who denied Mr. Shaheed's appeal because he did "not allege[] a physical injury actionable under the Federal Torts Claims Act . . . [and,] [t]here is no evidence [he] experienced a compensable loss as a result of negligence on [the] part of any BOP employee." *Id.* at 34. The decision further advised Mr. Shaheed that he may "bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter." *Id.*

Mr. Shaheed then sued the United States in this court seeking damages based on a *Bivens* action, conversion, and a breach of a bailment contract. ECF No. 1 at 9. He seeks $10,000,000. ECF No. 1 at 11. Mr. Shaheed also seeks leave to proceed *in forma pauperis*. ECF No. 2. The Government moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims, or, in the alternative, for failure to state a claim upon which relief can be granted under Rule 12(b)(6). ECF No. 10 at 6-9.

## II.     Standard of Review

To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For factual allegations to be plausible, they need not be "detailed." *Twombly*, 550 U.S. at 555. They must, however, be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The court will "assume all well-plead factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006)). Finally, a pro se litigant's pleadings will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III.    Discussion

Mr. Shaheed's complaint appears to include three theories of recovery: a *Bivens* action (his complaint states it is "by way of a 'Bivens,'" ECF No. 1 at 9), conversion, *id*. at 10, and breach of bailment contract, *id*. at 9. The Government moved to dismiss the *Bivens* claim and the conversion claims for lack of subject-matter jurisdiction. In his response, Mr. Shaheed explained that he mistakenly filed the statement of facts from another case that was premised on *Bivens*, but he does not base any claim in this court on *Bivens*. ECF No. 11 at 1. "Mr. SHAHEED emphatically states 'he's NOT filing [his] civil complaint premised on *Bivens*.'" *Id.* at 3 (alteration in original). He similarly abandoned the conversion claim, stating that the Government sought to dismiss the tort claim "despite the fact that Mr. Shaheed isn't raising a tort claim." *Id.* He claims instead to bring a "conversion-by-bailee" claim, which Mr. Shaheed claims has different elements. *Id.* That said, it appears that conversion by bailee is simply the tort of conversion committed by one acting as a bailee. But Mr. Shaheed clarifies what he means—he states that he is alleging that the Government breached a bailment contract. *Id.* In

3

other words, the only claim that Mr. Shaheed is pursuing in this court is for the alleged breach of contract by BOP.[3]

The Government moves to dismiss the breach of contract claim for failure to state a claim under Rule 12(b)(6). To survive the Government's motion to dismiss, Mr. Shaheed must plausibly allege that he entered a bailment contract with the United States. "A bailment relationship is said to arise where an owner, while retaining title, delivers personalty to another for some particular purpose upon an express or implied contract. The relationship includes a return of the goods to the owner or a subsequent disposition in accordance with his instructions." *Lionberger v. United States*, 371 F.2d 831, 840 (Ct. Cl. 1967). An express or implied contract contains four elements: "(1) mutuality of intent, (2) consideration, (3) an unambiguous offer of acceptance, and (4) 'actual authority' on the part of the government's representative to bind the government in contract." *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). The requirements for implied and express contracts "are the same" even though "the nature of the evidence differs." *Id.* "An implied-in-fact contract is one founded upon a meeting of minds and 'is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Id.* (quoting *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923)). Mr. Shaheed fails to adequately allege a bailment contract with the United States.

### A. Mr. Shaheed fails to plausibly allege that he voluntarily delivered the discs to the BOP.

Mr. Shaheed argues that he voluntarily delivered the discs to BOP when they were transferred from his prior defense counsel to FCI Berlin. ECF No. 1 at 9. But there was nothing voluntary about this transfer. Mr. Shaheed succeeded in getting a district court to order his former counsel to deliver his case file to him at FCI Berlin. ECF No. 1-2 at 2, 4. When the case file arrived at FCI Berlin, BOP did not deliver them to Mr. Shaheed. Instead, BOP took possession of the case file (the 40 computer discs) pursuant to its police power to secure the facility. *See* 28 C.F.R. §§ 543.10-.11. This undermines Mr. Shaheed's argument because, to plausibly allege that he voluntarily delivered personalty, Mr. Shaheed must show "a delivery of the chattel by the bailor and its acceptance by the bailee." *Studco Bldg. Sys. US, LLC v. 1st Advantage Fed. Credit Union*, 133 F.4th 264, 276 (4th Cir. 2025) (quoting *Crandall v. Woodard*, 143 S.E.2d 923, 927 (1965)).

In the context of a bailment relationship with the government, this court has been hesitant to find that seized property pursuant to governmental police powers was voluntarily delivered. *See Husband v. United States*, 90 Fed. Cl. 29, 37 (2009) (holding that, although the government issued a receipt for the return of the plaintiff's ring after he was arrested, it was nonetheless originally seized and cannot have been voluntarily delivered); *see also Kam-Almaz v. United States*, 682 F.3d 1364, 1369 (Fed. Cir. 2012) (holding that seizure of a computer by a customs

---

[3] If Mr. Shaheed had not clarified that he seeks only to recover for an alleged breach of contract, this court would dismiss the *Bivens* and conversion claims. This court lacks jurisdiction over *Bivens* actions. *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997). This court also lacks jurisdiction over conversion claims because they sound in tort. *Kant v. United States*, 123 Fed. Cl. 614, 616-17 (2015); 28 U.S.C. § 1491(a)(1).

agent at an airport was not voluntarily delivered, even though the customs agent explicitly promised the return of the computer). In other words, Mr. Shaheed did not deliver the computer discs to BOP for it to hold; Mr. Shaheed's former attorney sent them to Mr. Shaheed at FCI Berlin and the BOP took possession of—i.e., seized—them when they arrived at the facility. BOP did so pursuant to regulations allowing it to control what entered the facility, *see* 28 CFR §§ 543.10-.11, not because Mr. Shaheed volunteered them.

This is not to say that there can never be a bailment when the government seizes something. *Kam-Almaz*, 682 F.3d at 1370; *Kosak v. United States*, 465 U.S. 848, 860 n.22 (1984); *see also Pearsons v. United States*, 723 F. Supp. 3d 825, 835 (C.D. Cal. 2024) (denying the government's motion to dismiss because simply arguing that the government seized the plaintiff's property is insufficient to show that the plaintiff has not plausibly alleged a breach of a bailment contract). The court simply concludes that there was nothing voluntary about the delivery of the computer discs to BOP in this case—in fact, there was no delivery to BOP in this case. BOP intercepted the delivery to Mr. Shaheed and dictated to him the terms under which he could access the computer discs. That was not voluntary.

Nor can Mr. Shaheed plausibly allege that he could direct the computer discs be returned to him "in accordance with his instructions." *Kam-Almaz*, 682 F.3d at 1370. This is because the regulations, not Mr. Shaheed's instruction, set the terms under which the Government would *allow* Mr. Shaheed to view the computer discs. 28 C.F.R. §§ 553.10-.11. In plain terms, the Government dictated the access Mr. Shaheed would have to the computer discs—he could not instruct BOP to do anything different. And if Mr. Shaheed violated the terms the Government imposed on his access, he would lose access to the computer discs. ECF No. 1-2 at 6.

**B.    Mr. Shaheed fails to adequately allege the existence of an express or implied contract with the United States.**

Even if Mr. Shaheed could have established that he voluntarily delivered the computer discs to BOP and that BOP was required to return them to Mr. Shaheed based on his instruction, he cannot establish that there was either an express or implied contract between him and the Government regarding the safekeeping of the computer discs.

Mr. Shaheed cannot show the Rules Document constitutes an express contract with the Government for several reasons. First, the document does not reflect any intent to contract on behalf of the Government. To the contrary, the document states that Mr. Shaheed agrees to follow certain rules that BOP imposed, but BOP nowhere promised to hold Mr. Shaheed's property or do anything else. ECF No. 1-2 at 6. Nor was there any offer to contract. The Rules Document here is akin to the agreement that the plaintiff signed in *Shelton v. United States*, 539 F. App'x 1011 (Fed. Cir. 2013), which the Federal Circuit concluded was not a contract. There, Mr. Shelton signed a document agreeing to participate in a program that encouraged inmates to pay certain financial obligations, including "special assessments, fines, court costs, court-ordered restitution, and other government obligations." *Id*. at 1011-12. Like here, the document Mr. Shelton signed (and a BOP official signed as a witness) did not constitute a contract because "[t]he document concerns only [Mr. Shelton's] understanding of the [program] and his pledge to submit payments according to the specified schedule, and it indicates that prison staff participated only in providing information on the program and witnessing [Mr. Shelton's]

5

signature." *Id*. at 1013. This rationale applies to Mr. Shaheed's claim as well. The Rules Document merely reflects his understanding of the rules that he must follow to access the computer discs, but it does not obligate the Government to do anything. And like *Shelton*, the BOP signature on the Rules document was a "Staff Witness Signature" that reflects that the BOP official witnessed Mr. Shaheed sign. It does not reflect an intent to contract.

Second, the Rules Document makes clear that there was not consideration, which is required for there to be a contract. To show consideration, Mr. Shaheed must plausibly allege the existence of "a performance or a return promise [that] must be bargained for." Restatement (Second) of Contracts § 71 (1981). "A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* Consideration must be legally "sufficient and valuable[,] . . . which has been defined by '([a]) detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor.'" *Estate of Bogley v. United States*, 514 F.2d 1027, 1032 (Ct. Cl. 1975) (citing 1 Williston, Contracts 102 (1957)).

The Rules Document shows only that Mr. Shaheed promised to abide by the rules BOP dictated for him to have access to the computer discs. ECF No. 1-2 at 3. But the Government did not agree to do anything—the document only reflects Mr. Shaheed's unilateral agreement to abide by the rules. Mr. Shaheed does not argue that the Government agreed to do anything in the Rules Document. And a review of that document reveals that the only thing any BOP official would do was issue the computer discs to Mr. Shaheed in the computer room and log the discs out to Mr. Shaheed and then log them back in when he was done to ensure he did not take them with him. ECF No. 1-3 at 3. BOP had a pre-existing duty to make these materials available to Mr. Shaheed. 28 C.F.R. §§ 543.10-.11. That is not consideration because "[p]erformance of a pre-existing legal duty is not consideration." *Am. Red Ball Int'l, Inc. v. United States*, 79 Fed. Cl. 474, 478 (2007) (citing *Allen v. United States*, 100 F.3d 133, 134 (Fed.Cir.1996)).

Mr. Shaheed's argument that a "benefit to the promisor is unnecessary" does not salvage his claim or overcome the need for consideration. ECF No. 11 at 5 (cleaned up). Mr. Shaheed misunderstands the law. The question is not whether there is a benefit to the promisor; the question is whether there was a bargained for exchange. In other words, Mr. Shaheed must still allege facts sufficient to establish that there was a bargained-for exchange. Restatement (Second) of Contracts § 79 (1981). Even reading the complaint in the light most favorable to Mr. Shaheed, he has not done so. Because the Rules Document lacks several requirements needed to form a contract, it does not constitute an express contract between Mr. Shaheed and the Government.

Mr. Shaheed's argument that his conversation with the BOP official persuaded him to sign the Rules Document does not salvage his claim. He claims that this BOP official stated that he had "authority . . . on behalf of the U.S., in contracts and gave SALAHUDIN SHAHEED assurance that [his] property would be safe with the United States and explained how SALAHUDIN SHAHEED could take possession of [his] property. The aforesaid verbal communication, persuaded SALAHUDIN SHAHEED to tender [his] property to the United States." ECF No. 14 at 1-2. Apparently, Mr. Shaheed needed this persuasion to tender his property to the Government because he purports to have had other options. Specifically, he asserts that he could have rejected the Government's "offer," retained legal representation, and

have the new lawyers print the computer files on paper and deliver the paper to him. ECF No. 11 at 3-4. Even if the court accepts as true the BOP official's statement, it does not help Mr. Shaheed. Again, Mr. Shaheed did not tender his property to BOP voluntarily; BOP took possession and control of the computer discs when they arrived at the facility. The Rules Document and the conversation with the BOP official were merely explanations to Mr. Shaheed of the terms by which the Government would allow him to access the computer discs. There was no offer by the Government for Mr. Shaheed to reject. And the hypothetical chain of events that could have happened—that he could have hired a new lawyer, he could have sent the computer discs to the lawyer, and that the lawyer could have delivered the contents of these computer discs on paper—is too speculative to survive the Government's motion. Mr. Shaheed did not have an attorney to send the computer discs to—he only had them because he had to get a court to order his former attorney to turn them over. ECF No. 1-2 at 1.

In the end, there is no plausible allegation that Mr. Shaheed and the Government entered a bailment agreement regarding the computer discs.

### IV.   Conclusion

For the forgoing reasons, the court **GRANTS** the Government's motion to dismiss, ECF No. 10. The court also **GRANTS** Mr. Shaheed's motion to proceed in forma pauperis, ECF No. 2. The Clerk's Office is directed to enter judgment accordingly.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
